FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHAME ON YOU PRODUCTIONS, INC., a California corporation, *Plaintiff-Appellant*, v. ELIZABETH BANKS, an individual; MAX HANDELMAN, an individual; STEVEN BRILL, an individual; BRILLCO, INC., a California corporation; SIDNEY KIMMEL ENTERTAINMENT, LLC, a California limited liability company; FILMDISTRICT PICTURES, LLC, a Delaware limited liability company; LAKESHORE ENTERTAINMENT CORP., a Delaware corporation; LAKESHORE ENTERTAINMENT GROUP, LLC, a California limited liability company; FOCUS WORLD, A DIVISION OF FOCUS FEATURES, LLC, a California corporation, *Defendants-Appellees.* | No. 16-55024 <br><br> D.C. No. 2:14-cv-03512-MMM-JC |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

| | |
|---|---|
| SHAME ON YOU PRODUCTIONS, INC., a California corporation,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>ELIZABETH BANKS, an individual; MAX HANDELMAN, an individual; STEVEN BRILL, an individual; BRILLCO INC., a California corporation; SIDNEY KIMMEL ENTERTAINMENT, LLC, a California limited liability company; FILMDISTRICT PICTURES, LLC; LAKESHORE ENTERTAINMENT GROUP, LLC, a California limited liability company; LAKESHORE ENTERTAINMENT CORP., a Delaware corporation; FOCUS WORLD, A DIVISION OF FOCUS FEATURES, LLC, a California corporation; BROKEN ROAD PRODUCTIONS, INC., a California corporation, as Doe 1; TODD GARNER, an individual, as Doe 2; DOES 3–10, inclusive,<br>*Defendants-Appellees.* | No. 16-56311<br><br>D.C. No. 2:14-cv-03512-MMM-JC<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted April 13, 2018
Pasadena, California

Filed June 21, 2018

Before:  MARY M. SCHROEDER, RICHARD R.
CLIFTON, and MILAN D. SMITH, JR., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Copyright / Attorneys' Fees

The panel affirmed the district court's orders awarding attorney's fees to defendants under 17 U.S.C. § 505 following the dismissal of a copyright infringement claim concerning the film *Walk of Shame*.

The panel held that the district court did not abuse its discretion in awarding attorneys' fees because the copyright claim was objectively unreasonable, and other factors, although mixed, did not combine to outweigh the objective unreasonableness of the claim under *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016).  The district court did not err in holding that the copyright claim and a contract claim were interrelated and declining to apportion fees.  Further, the district court did not abuse its discretion in determining the amount of the fees.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Charles M. Coate (argued), Abrams Coate LLP, Los Angeles, California, for Plaintiff-Appellant.

Stephen R. Mick (argued) and Devin Stone, Barnes & Thornburg LLP, Los Angeles, California, for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiff-Appellant Shame On You Productions (SOYP) brought an unsuccessful suit for copyright infringement and breach of implied contract against Defendants-Appellees (Defendants) associated with the film *Walk of Shame*, alleging that it was copied from a screenplay given to two of the Defendants seven years prior to the film's release. After both claims were dismissed, Defendants moved for attorney's fees and costs, which the district court granted. SOYP appeals, arguing that the district court erred in awarding fees. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendants created and distributed the film *Walk of Shame*, which was released in May 2014. In April 2014, SOYP's counsel sent two letters to Defendants alleging that *Walk of Shame* included many elements copied from a screenplay titled *Darci's Walk of Shame*, which was written by SOYP president Dan Rosen. The letters alleged that Rosen's screenplay was sent to Elizabeth Banks, the star of *Walk of Shame*, in 2007, and that Rosen met with Banks and her husband and producing partner Max Handelman to

discuss the project.  According to the letters, Rosen wanted Banks to star in his movie, but Banks and Handelman never followed up with Rosen about the project after the meeting. SOYP's counsel requested that Defendants produce "all drafts of the subject screenplay, development notes, electronic notes or email communications regarding the same."  When Defendants did not do so, SOYP filed suit on May 7, 2014, alleging claims for copyright infringement and breach of implied contract.

Over the following months, a number of discovery disputes arose between the parties.  Before the suit was filed, counsel for Defendants asked SOYP for a copy of Rosen's script, but did not receive it.  At a scheduling conference in September 2014, the court ordered the parties to exchange screenplays by October 14, 2014.  Defendants turned over a copy of the *Walk of Shame* script later in October, but despite repeated requests, SOYP refused to produce Rosen's script until Defendants produced all of their drafts, development notes, and other requested materials.  After a further court order in December, SOYP finally produced Rosen's script. During this time period, the parties were unable to resolve several other discovery disputes, and SOYP filed eight motions to compel production of documents, which Defendants moved to strike.  A magistrate judge ordered the parties to meet and confer, which they did telephonically on January 7, 2015.  However, they discussed only two out of the 271 requests at issue, and did not reach agreement. SOYP's counsel terminated the call over Defendants' counsel's objection.  The magistrate judge denied a further motion to strike from Defendants and ordered the parties to meet and confer again, at which point they reached a stipulated resolution of the issues raised in the motions to compel.

In February 2015, Defendants filed a motion for judgment on the pleadings. Along with its opposition to this motion, SOYP filed an amended complaint that added two new defendants. The new defendants moved to dismiss the complaint, and on August 14, 2015, the court granted this motion and the other Defendants' motion for judgment on the pleadings. The court held that as a matter of law there was no substantial similarity between the two works, dismissed the federal copyright claim with prejudice, and dismissed the state law contract claim without prejudice, declining to exercise supplemental jurisdiction. We affirmed this merits order in a two-sentence memorandum. *Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir.), *cert. denied*, 138 S. Ct. 323 (2017).

In late August 2015, Defendants filed a motion for attorney's fees and costs. A hearing on the motion was held on December 7, 2015, before District Judge Margaret Morrow, who had adjudicated the merits of the case. Before the hearing, Judge Morrow issued an unsigned tentative order awarding Defendants $314,669.75 in fees and $3,825.15 in costs, and after the hearing she issued a minute order stating that Defendants' motion was granted in part and denied in part, and that a final order would issue. However, Judge Morrow retired from the bench the following month without issuing a final order fixing the amount of attorney's fees. In July 2016, Defendants requested a final order. The case then came before Chief Judge Virginia Phillips, who issued a final order on August 14, 2016, that awarded Defendants the same amount in fees

as Judge Morrow's earlier tentative order. SOYP timely appealed.[1]

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review a district court's decision regarding the award of attorneys' fees under the Copyright Act for an abuse of discretion." *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006).

## ANALYSIS

## I. Defendants' Entitlement to Fees

Pursuant to 17 U.S.C. § 505, a district court has discretion to award full costs and reasonable attorney's fees to the prevailing party in a copyright action. In 1994, the Supreme Court approved of "several nonexclusive factors that courts should consider in making awards of attorney's fees" pursuant to § 505. These factors included "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence' . . . so long as such factors are faithful to the purposes of the Copyright Act." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986)). In 2016, the Court, "seeing a need for some additional guidance respecting the application of § 505," emphasized that a court should "giv[e] substantial weight to the reasonableness of [the losing party's] litigating

---

[1] SOYP separately appealed from Judge Morrow's December 7 order. We consolidated that appeal with the appeal from Judge Phillips's August 14 final order.

position, but also tak[e] into account all other relevant factors." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985, 1989 (2016).

SOYP argues that Judge Phillips's decision, which was issued about two months after *Kirtsaeng* was handed down, improperly failed to take that opinion into account, and did not cite it.  However, *Kirtsaeng* did not effect a significant change in the law, and we have upheld pre-*Kirtsaeng* decisions on the basis that *Kirtsaeng* did not require a different result.  *See Williams v. Gaye*, 885 F.3d 1150, 1177 (9th Cir. 2018); *Choyce v. SF Bay Area Indep. Media Ctr.*, 669 F. App'x 863 (9th Cir. 2016).  Prior to *Kirtsaeng*, Ninth Circuit case law held that

> A district court may consider (but is not limited to) five factors in making an attorneys' fees determination pursuant to § 505.  These factors are (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence.

*Wall Data Inc.*, 447 F.3d at 787.  After *Kirtsaeng*, district courts should continue to consider the same factors, but accord substantial weight to the fourth factor.  136 S. Ct. at 1989.

## A.  Objective unreasonableness

When a court weighs whether to grant attorney's fees, a legal argument that loses is not necessarily unreasonable. *See, e.g.*, *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170,

1181 (9th Cir. 2013). In this case, the district court based its determination that SOYP's claim was objectively unreasonable on the distinct lack of similarity between the two works. SOYP alleged facts suggesting that at least some of the Defendants had direct access to Rosen's screenplay, so substantial similarity was the remaining crucial element for its claim. *See Williams*, 885 F.3d at 1163; *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).

The district court's merits order summarized the plot of both screenplays. *See Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1133–40 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 323 (2017). In finding them not to be substantially similar, the court held that the concept of a "walk of shame," upon which both plots are based, "is not itself protectable." *Id.* at 1151. It held that many of the similarities that SOYP alleged, such as the main character losing her cell phone and wallet, were "[s]cenes-à-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, [which] cannot sustain a finding of infringement." *Id.* at 1148 (first alteration in original) (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002)); *see id.* at 1151. Other alleged similarities were, upon closer inspection, not so similar: while acknowledging that "both lead characters make it to an important event," the district court noted that the important events are very different. *Id.* at 1152. "In *Darci's Walk of Shame*, the important event is a farewell brunch at the Four Seasons Maui following the wedding of Darci's sister. In *Walk of Shame*, the event is a morning news broadcast [in Los Angeles] Meghan must anchor to secure her 'dream job.'" *Id.* The district court did note several similarities between the two films, such as the fact that "[b]oth lead characters have recently separated from ex-boyfriends" and "[i]n both [works], the lead character is

flown to her final destination by helicopter." *Id.* at 1152–53. Overall, however, the court held that "the two works at issue tell fundamentally different stories" with different plots, themes, dialogues, moods, settings, paces, and characters. *Id.* at 1151–68.    There was "virtually no overlap in dialogue." *id.* at 1156, and "the only similarities between the characters . . . are abstract and generalized," *id.* at 1168.

The district court did not find the substantial similarity issue to be close.  It found that the two screenplays had only isolated plot elements in common, and that in all other regards they differed markedly.  SOYP argues that this finding was "inherently subjective," and while its claim may have been incorrect as a matter of law, it could not have been unreasonable to perceive the two screenplays as similar. "We employ a two-part analysis in this circuit—an extrinsic test and an intrinsic test—to determine whether two works are substantially similar." *Cavalier*, 297 F.3d at 822.  "The 'extrinsic test' is an objective comparison of specific expressive elements," whereas "[t]he 'intrinsic test' is a subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.'" *Id.* (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).  The district court recognized in its merits order that "[i]f plaintiff satisfies the extrinsic test, the intrinsic test's subjective inquiry must be left to the jury and [any dispositive motion] must be denied." *Shame on You Prods., Inc.*, 120 F. Supp. 3d at 1148–49 (alterations in original) (quoting *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)).  Accordingly, the district court's  holding that the two works were not substantially similar was based entirely on the objective extrinsic test, and not on the subjective intrinsic test.   Because this test is objective, SOYP's subjective beliefs regarding its outcome are no more

relevant to the reasonableness determination than a party's subjective belief regarding any other legal test.

## B. Remaining factors

Under *Kirtsaeng*, a district court must give "substantial weight" to the reasonableness of SOYP's litigating position, but it also takes into account the other factors identified in our case law.  136 S. Ct. at 1989.  These factors, although mixed, do not combine to outweigh the objective unreasonableness of SOYP's claim.

SOYP concedes that the "degree of success" factor favors Defendants, but it argues that their success was only partial because, while the federal copyright claim was dismissed with prejudice, the state law implied contract claim was dismissed without prejudice, and has in fact been refiled in state court.  The focus in the fees determination is whether "successful prosecution or successful defense of the action furthers the purposes of the Copyright Act."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007).  Accordingly, the district court did not abuse its discretion in placing greater emphasis on the outcome of the Copyright Act claim.

The district court also found that SOYP acted in bad faith, in part because of its long delay in turning over a copy of Rosen's screenplay.  Defendants requested to see the screenplay before the complaint was filed, but SOYP neither provided a copy nor attached one to the complaint, which extensively referenced the script.[2]  After the complaint was

---

[2] The district court relied on both screenplays as well as the finished film of *Walk of Shame* in deciding the motions to dismiss and for judgment on the pleadings because it held that the complaint

filed, SOYP stated that it would produce the script with its initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1)(A)(ii), but it did not do so. Finally, SOYP disobeyed a court order to produce the script, forcing Defendants to seek another court order requiring the same thing. The court also noted SOYP's obstructionist conduct during discovery and failure to confer in good faith, which "raise[] an inference that its primary motivation was not receipt of the documents in question, but rather draining Defendants' resources in order to force a settlement." Defendants charged below and argue on appeal that SOYP knew its claim was meritless and attempted to drag out the litigation as long as possible in order to obtain a nuisance-value settlement. The district court held there was evidence to support this view and that this factor weighed in favor of a fee award.

SOYP argues, however, that Defendants cannot complain they lacked access to the screenplay because they were in possession of it since 2007. On July 31, 2007, Banks was emailed a copy of the screenplay. The district court surmised that Banks may not have remembered that she received the script in an email seven years prior to this suit, but the initial letter sent by SOYP's counsel to Defendants (including Banks) included this allegation, and Banks retained the script in her email. Furthermore, before SOYP produced the screenplay, Defendants' counsel at one point referred in open court to the fact that *Darci's Walk of Shame* is set in Hawaii, a fact that had not been alleged in the complaint. While Defendants' possession of Rosen's screenplay does not excuse SOYP's failure to obey Rule 26(a)(1)(A)(ii) and a court order or its refusal to confer in

---

incorporated these works by reference, even though they were not attached. *Shame on You Prods., Inc.*, 120 F. Supp. 3d at 1144–45.

good faith, it does call into question the idea that SOYP's tactics were purely dilatory and intended to stave off adjudication of what it knew to be a meritless claim. Overall, although the evidence of bad faith is not conclusive, the district court did not abuse its discretion in finding that the factor nonetheless weighed in favor of Defendants.

The district court also held that the factor of deterrence weighed in favor of an award of fees to Defendants. It acknowledged that Defendants had not demonstrated a need for specific deterrence, as there was no evidence that SOYP or Rosen had filed baseless or frivolous claims in the past, but held that the purpose of general deterrence would be served by awarding fees against a party who had litigated an objectively unreasonable claim, or who had brought a claim in bad faith. In similar cases, we have held that this reasoning does not constitute an abuse of discretion. *See, e.g.*, *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1042–43 (9th Cir. 2014).

Finally, the district court held that the overall goals of the Copyright Act would be served by a fee award because it would "reward artists and others who defend against meritless claims, and [would] encourage artists to continue producing original works without fear of having to defend against baseless claims." This generic reasoning might be in tension with the Supreme Court's repeated admonition that "a district court may not 'award[] attorney's fees as a matter of course'" to a prevailing party. *Kirtsaeng*, 136 S. Ct. at 1985 (alteration in original) (quoting *Fogerty*, 510 U.S. at 533). The district court did not quite award fees "as a matter of course," but it did justify its fee award partly by pointing to reasoning that could be broadly applied to most copyright cases in which a defendant prevails. As discussed below, the balance of factors does not demonstrate that the district court

abused its discretion in determining that Defendants were entitled to fees, regardless of the validity of its reasoning with regard to the overall goals of the Copyright Act.  As such, we need not resolve the question raised by the district court's determination that a fee award would further the goals of the Copyright Act.

The district court also placed weight on the fact that Defendants' successful defense "nudged copyright law in the direction of 'free expression' by appealing to basic principles about the unprotectability of ideas, instead of relying on 'technical defense[s], such as the statute of limitations, laches, or the copyright registration requirements."  In *Kirtsaeng*, the Supreme Court expressed skepticism about relying on a lawsuit's impact on the law in determining a fee award; this factor's incentive effect on litigants is uncertain, and it is less easily administrable than other factors.  136 S. Ct. at 1987–88.  However, the Court did not explicitly bar district courts from considering a suit's impact on copyright law.  We need not decide whether the district court erred in taking this factor into account, as the outcome is the same either way.

Overall, the district court did not abuse its discretion in weighing the remaining factors, which together do not outweigh the objective unreasonableness of SOYP's litigating position.  The district court therefore did not abuse its discretion in determining that Defendants were entitled to fees.

## II.  SOYP's State Law Claim

"Controlling precedent establishes 'that a party entitled to attorney's fees as a prevailing party on a particular [copyright] claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in

defending against that one claim or any 'related claims.'" *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003) (quoting *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997)). "To determine whether the claims are related, the district court should focus on whether the claims on which [the party] did not prevail 'involve a common core of facts *or* are based on related legal theories.'" *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (quoting *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)).

SOYP's breach of implied contract claim, which was not adjudicated on the merits, was nevertheless based on the allegation that Defendants agreed to pay for Rosen's script if they decided to use it. Like the copyright claim, the contract claim therefore turned on whether or not Defendants had copied *Darci's Walk of Shame* to make *Walk of Shame*. Furthermore, as the district court noted, SOYP itself conceded that "[t]he vast majority of this case including discovery concerned both of [p]laintiff's claims equally, in that the copyright infringement and contractual claim arose out of the same set of facts and circumstances." Since the copyright and contract claims involve a common core of facts and are based on related legal theories, the district court did not err in holding the claims interrelated and declining to apportion fees.

## III.    The Size of the Fee Award

SOYP's arguments against the reasonableness of Defendants' fee award include some of the same objections it made below. These objections were addressed by the district court, and SOYP offers no new arguments against the district court's thorough resolution of those objections.

First, SOYP objects to the award of fees for 136.5 hours of time entries that contained redactions. We have held that such redactions in time entries to preserve secrecy of work product are permissible as long as they "do not impair the ability of the court to judge whether the work was an appropriate basis for fees." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). In this case, the district court found that "some of the billing entries have been so heavily redacted that it [could not] assess the reasonableness of the time expended," identified nine such entries, and accordingly deducted 4.2 hours from the fee award. SOYP has not shown that the district court abused its discretion in deducting only 4.2 of the requested 136.5 hours.

Second, SOYP objects to fees Defendants requested for preparation of responses to SOYP's discovery requests. The district court agreed with SOYP that the number of hours claimed was unreasonable in light of the "boilerplate objections" that were copied and pasted into all responses. It held that "Defendants spent approximately twice as long preparing the responses as was reasonable" and deducted 50% of the claimed hours. SOYP neither acknowledges this 50% deduction nor provides any argument that it was insufficient. Accordingly, it has not shown that the district court abused its discretion.

Third, SOYP objects to several categories of hours Defendants expended in connection with their oppositions to SOYP's motions to compel discovery and for sanctions and, after those motions were granted in part, on preparation of supplemental responses and production of documents. SOYP's primary arguments are that none of these hours would have been necessary if Defendants had "properly complied with their discovery obligations at the outset," and

that SOYP "effectively prevailed" on its motions to compel despite Defendants' opposition.  The district court rejected these objections because even losing motions may be compensable, *see Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052–53 (9th Cir. 1991), and furthermore Defendants' oppositions did not entirely lose: the motions to compel were granted only in part.  The district court did not abuse its discretion in holding that these hours contributed to Defendants' success and were therefore reasonable and compensable.

Finally, SOYP argues that the hourly rates claimed by defendants' attorneys and paralegals were excessive or unjustified.  The district court examined each claimed hourly rate, compared it to rates deemed reasonable by other courts in other cases, and found the rates charged by one partner and two associates to be reasonable.  However, it declined to award fees for work performed by two other attorneys which was not sufficiently justified, and it found two of the three paralegals' claimed hourly rates to be excessive, reducing them to $250 each.  SOYP neither acknowledges nor attacks the district court's careful resolution of these issues.  Accordingly, it has not shown that the district court abused its discretion.

## IV.   Timeliness of Defendants' Motion for Fees and Costs

In general, motions for attorney's fees must be filed with the court no later than fourteen days after entry of judgment.  Fed. R. Civ. P. 54(d)(2)(B)(i).  The final judgment in this case was entered on August 14, 2014, and SOYP argues that the motion for fees and costs was not filed until August 31, after the fourteen-day deadline had elapsed.  However, Defendants' motion was first filed on August 28, within the deadline.  On the next business day, August 31, the clerk

struck that filing and instructed Defendants to refile the motion under the correct e-filing categories, which they did later that day.

We have repeatedly held that the fourteen-day deadline under Rule 54 "is not jurisdictional." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 676 (9th Cir.) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 889–90 (9th Cir. 2000)), *cert. denied*, 138 S. Ct. 504 (2017). Because any defect was not jurisdictional, SOYP has forfeited this claim by failing to raise it below. *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018).

## CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed. SOYP shall bear costs on appeal. Fed. R. App. P. 39(a)(2).

**AFFIRMED.**